AF Approval ____SN____                              Chief Approval

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                       CASE NO. 2:22-cr-80-TPB-KCD

THEODORE GARLOW

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, Theodore Garlow, and the attorney for the defendant,

Joshua Sabert Lowther, mutually agree as follows:

**A.    Particularized Terms**

1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Indictment.  Count One charges the defendant with possession with intent to

distribute a controlled substance (400 grams or more of fentanyl), in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 18 U.S.C. § 2.

2.    Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of

imprisonment of ten years up to life, a fine of up to $10,000,000, a term of

Defendant's Initials _TG_

supervised release of at least five years and up to life, and a special assessment of $100.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:    The defendant knowingly possessed a controlled substance (fentanyl); and

Second:    the defendant intended to distribute the controlled substance (fentanyl); and

Third:    the weight of the fentanyl the defendant possessed was more than 400 grams of a mixture or substance containing a detectible amount of fentanyl.

4.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

5.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the

Defendant's Initials _TG_                    2

defendant's applicable guidelines range as determined by the Court pursuant

to the United States Sentencing Guidelines, as adjusted by any departure the

United States has agreed to recommend in this plea agreement.  The parties

understand that such a recommendation is not binding on the Court and that,

if it is not accepted by this Court, neither the United States nor the defendant

will be allowed to withdraw from the plea agreement, and the defendant will

not be allowed to withdraw from the plea of guilty.

6.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse

information is received suggesting such a recommendation to be unwarranted,

the United States will recommend to the Court that the defendant receive a

two-level downward adjustment for acceptance of responsibility, pursuant to

USSG § 3E1.1(a).  The defendant understands that this recommendation or

request is not binding on the Court, and if not accepted by the Court, the

defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level

prior to operation of subsection (a) is level 16 or greater, and if the defendant

complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea

Agreement, including but not limited to, the timely submission of the financial

affidavit referenced in Paragraph B.5., the United States agrees to file a motion

Defendant's Initials _TG_                    3

pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.   Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.   Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the

charges in this case and other matters, such cooperation to further include a

full and complete disclosure of all relevant information, including production

of any and all books, papers, documents, and other objects in defendant's

possession or control, and to be reasonably available for interviews which the

United States may require.  If the cooperation is completed prior to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion at the time of sentencing recommending (1) a downward departure

from the applicable guideline range pursuant to USSG §5K1.1, or (2) the

imposition of a sentence below a statutory minimum, if any, pursuant to 18

U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to

sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United

States Attorney for the Middle District of Florida, warranting the filing of a

motion for a reduction of sentence within one year of the imposition of

sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant

understands that the determination as to whether "substantial assistance" has

been provided or what type of motion related thereto will be filed, if any, rests

solely with the United States Attorney for the Middle District of Florida, and

Defendant's Initials _TG_                    5

the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and

Defendant's Initials _TG_                6

unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recission of any order dismissing them or, alternatively, does hereby waive, in open court,

Defendant's Initials _TG_                    7

prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the

Defendant's Initials _TG_                    8

United States, the United States may move the Court to declare this entire plea agreement null and void.

    11.    <u>Forfeiture of Assets</u>

        The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant or defendant's nominees.

        The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

        If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the

Defendant's Initials  _TG_        9

defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete

Defendant's Initials _TG_        10

information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

Defendant's Initials _TG_                    11

B.    **Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition

to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution

to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses

described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant

to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. §

3663, including restitution as to all counts charged, whether or not the

defendant enters a plea of guilty to such counts, and whether or not such

counts are dismissed pursuant to this agreement.  The defendant further

understands that compliance with any restitution payment plan imposed by

the Court in no way precludes the United States from simultaneously pursuing

other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)),

including, but not limited to, garnishment and execution, pursuant to the

Mandatory Victims Restitution Act, in order to ensure that the defendant's

restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court

shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure

that this obligation is satisfied, the Defendant agrees to deliver a cashier's

check, certified check or money order to the Clerk of the Court in the amount

Defendant's Initials _*TG*_          12

of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities,

Defendant's Initials ___TG___        13

if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.    <u>Financial Disclosures</u>

     Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.  The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States

Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

     6.   <u>Sentencing Recommendations</u>

        It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw

Defendant's Initials  <u> _TG_ </u>        15

defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.     <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation

and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set

Defendant's Initials  _K_                    18

forth below are true, and were this case to go to trial, the United States would

be able to prove those specific facts and others beyond a reasonable doubt.

<u>FACTS</u>

On or about October 1, 2021, the defendant, Theodore Garlow, did

knowingly and intentionally possess with intent to distribute a controlled

substance.  The defendant was in possession of more than 400 grams of

fentanyl, a Schedule II controlled substance.

In 2021, the defendant was employed by the United States Postal

Service (USPS) as a Rural Carrier assigned to the Lehigh Acres Post Office

located in Lehigh Acres, Florida.

On September 30, 2021, the United States Postal Service (USPS) Office

of Inspector General (OIG) received information regarding five (5) suspicious

parcels that were enroute to Garlow's home address located in Lehigh Acres,

Florida.  The five USPS Priority Mail Parcels were addressed to Ted Garlow

at his home address in Lehigh Acres, Florida and had a return address from

Miami, Florida.

On October 1, 2021, USPS OIG agents took possession of the five

suspicious parcels from the Lehigh Acres Post Office.

USPS OIG agents conducted a search of postal records which revealed

that Garlow received approximately five additional parcels bearing similar

characteristics which had been delivered to a UPS Store located in Lehigh Acres, Florida.

On September 30, 2021, Garlow sent text messages to the postal carrier assigned to deliver the mail on the route that Garlow's home is located on to inquire about the five parcels. After the postal carrier told Garlow that he did not have any of the five parcels, Garlow went to the Lehigh Acres Post Office and walked around the building in search of the five parcels.

On October 1, 2021, two United States Postal Inspectors made contact with Garlow at his residence in Lehigh Acres, Florida, regarding the five parcels destined for his home. Garlow signed an Acknowledgement of Rights for Employees Not in Custody form, which indicated that a Special Agent with USPS- OIG identified himself and advised that he was conducting an investigation into alleged misconduct/improper performance of official duties. Garlow initialed that he had been advised that he had the right to remain silent if his answers may tend to incriminate him, and he initialed that he had been advised that anything he said or did may be used as evidence against him in a court of law and in other proceedings. Further he initialed that he had been advised that if he refused to answer questions because his answers may tend to incriminate him, that he would not be disciplined solely for remaining silent. The form that Garlow signed further made clear that he had been

Defendant's Initials _K_          20

advised that the interview was strictly voluntary, and that he could leave or stop answering questions at any time. When asked if he went to the Lehigh Acres Post Office on September 30, 2021, to inquire about the whereabouts of the five parcels, Garlow admitted that he went to the post office to find out why the parcels had not been delivered. Garlow said that he verified the tracking on the parcels which indicated that the parcels were out for delivery. Garlow said that he realized Postal Inspectors may have the parcels after the carrier that delivers to his home told Garlow that he did not have the packages and that Garlow needed to speak to management.

Garlow provided verbal consent to open one of the parcels, which was opened in front of him. The contents of the parcel included four vacuum sealed bags containing pink pills. When asked what the pills were, Garlow said that he believed that the pills were Tramadol. Garlow provided consent to open the remaining four parcels and signed a Consent to Search form.

Garlow was asked how he got involved in receiving these parcels. Garlow said that he received a text message from an unknown number, which asked if he wanted to make more money. Garlow said that he ignored the message for a while, but he admitted that he replied to it after having difficulties getting his Worker's Compensation approved. Garlow said that he replied to the text message because he needed the money to pay the mortgage

Defendant's Initials _TG_          21

and other bills.  Garlow said that he started communicating via Whats App with an individual about four months prior.  According to Garlow, this individual instructed him to open a P.O. Box at the post office and a box at a UPS Store.  Garlow stated that he opened a P.O. Box in the Lehigh Acres Post Office and a box at the UPS Store.  Garlow said that he provided his home address and the addresses of the two boxes to the individual.  Garlow stated that his role consisted of receiving something through the mail, which he then had to ship to someone else.  Garlow said that initially he did not know what he would be receiving and he was surprised when he received the first shipment which contained pills.  Garlow said that he asked the individual if the pills were illegal, and Garlow said that this person promised him that it was nothing illegal, only Tramadol.  Garlow later admitted, however, to receiving parcels containing what the individual said was Tramadol, Percocet, Hydrocodone, Oxycodone, and another pill for sleep.  Percocet, Hydrocodone, and Oxycodone are all Schedule II controlled substances. Garlow said that he would receive the parcels with the pills, and he would count and separate the pills into baggies, print out shipping labels, and mail out the pills.  Garlow said that he received a spreadsheet from an individual detailing the names and addresses of where to ship the pills.  The spreadsheet would indicate the number of pills and what color pills to send out.  Garlow

Defendant's Initials _TG_                    22

said that he would receive a text message with tracking numbers from this same individual to indicate that the parcels were on the way.  In fact, Garlow showed agents a photo of a text message he received from the individual indicating the five intercepted boxes were being delivered to Garlow's home address.  When asked how many parcels he had previously received, Garlow admitted that he may have received about 10 to 15 parcels.

During the interview, Garlow was asked if he had any more pills in his residence, and Garlow brought out eight small plastic crates full of different colored pills, already separated in zip lock bags.  The crates also included pills in blister packs labeled as Tramadol Hydrochloride Tablets.  When asked if there was anything else, Garlow brought out 19 USPS Priority Mail Flat Rate envelopes, 16 of which had a shipping label attached.  Garlow stated the envelopes contained either Tramadol, Percocet, Hydrocodone, Oxycodone, or sleep aid pills.  Garlow provided the 8 crates full of pills and the 19 envelopes to the agents and signed a USPIS Consent to Search form.

When asked how much he was paid to ship the pills, Garlow said it depended on the number of pills being shipped and he could not provide an estimate per mailing.  Garlow said he did not know who paid him, but he said that he was paid via PayPal.  When asked how much money he had received in total, Garlow said that he did not know for sure, but he estimated that he

Defendant's Initials __*TG*__                23

made a "couple thousand dollars." When asked how many envelopes or parcels he mailed out, Garlow said he mailed out more than 200. Garlow said that the individual sold the pills on the internet.

Garlow said that he knew that what he was doing was wrong, but he needed to make money. Garlow insisted that this was not a long-term thing. Garlow said that he got in too deep and did not know how to get out of it.

A review of postal records revealed Garlow received approximately 17 additional parcels at his residence in Lehigh Acres, Florida, and 20 additional parcels at the UPS Store located in Lehigh Acres, Florida, from April 12, 2021, to October 12, 2021. These parcels bear similar characteristics to the five intercepted parcels.

The pills seized from the defendant's home on October 1, 2021, were sent to the USPIS Forensic Laboratory for further analysis. The subsequent Forensic Laboratory Examination Report completed by the Forensic Laboratory Services in Dulles, VA revealed that a majority of the pills were fentanyl, a Schedule II controlled substance. The lab report noted that the pills were a total of approximately 11,840.05 grams of fentanyl; therefore, in excess of 11 kilograms of fentanyl. Further, the lab analysis of the pills found that the physical examination of some of the pills for the physical characteristics including shape, color, and manufacturer's markings indicated

that the tablets should have been a controlled substance such as hydrocodone,

oxycodone, or oxycodone hydrochloride manufactured by a specific company,

but were instead analyzed and found to be fentanyl.

    12.   <u>Entire Agreement</u>

       This plea agreement constitutes the entire agreement between the

government and the defendant with respect to the aforementioned guilty plea

and no other promises, agreements, or representations exist or have been

made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this  26  day of  December  , 2022.

ROGER B. HANDBERG
United States Attorney

Theodore Garlow
Defendant

Yolande G. Viacava
Assistant United States Attorney

Joshua Sabert Lowther
Attorney for Defendant

Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

Defendant's Initials  TG          26